John HOVAN, Plaintiff, Appellee,

v.

UNITED BROTHERHOOD OF CARPEN-
TERS AND JOINERS OF AMERICA,
et al., Defendants, Appellants.

No. 82–1720.

United States Court of Appeals,
First Circuit.

Argued Jan. 31, 1983.

Decided April 5, 1983.

Milton Stanzler, with whom Richard A.
Skolnik, Lynette Labinger, and Abedon, Mi-
chaelson, Stanzler, Biener, Skolnik & Lip-
sey, Providence, R.I., were on brief, for
defendants, appellants.

Stephen J. Fortunato, Jr., with whom
McKinnon & Fortunato, Pawtucket, R.I.,
was on brief, for plaintiff, appellee.

Before ALDRICH, BOWNES and BREY-
ER, Circuit Judges.

BREYER, Circuit Judge.

John Hovan works for a Rhode Island
firm whose employees are represented by
Local 94 of the United Brotherhood of Car-
penters and Joiners of America ("the Un-
ion"). Hovan seeks to join the Union, but
he has been denied membership because he
will not swear an oath that states, "I am
not now affiliated with, and never will join
or give aid, comfort or support to any Revo-
lutionary Organization." Hovan sued the
Union and its officers in federal district
court, alleging violations of federal labor
statutes and the federal Constitution.

The district court, faced with cross-mo-
tions for summary judgment, referred the
dispute to a magistrate. *See* 28 U.S.C.
§ 636(b)(1)(B). The magistrate rejected
Hovan's statutory claims but accepted his
constitutional argument. The Union filed
objections to the magistrate's constitutional
recommendation with the district court,
pursuant to 28 U.S.C. § 636(b)(1); Hovan
moved that the district court "accept and
approve the decision" of the magistrate.
As required by statute, the court then made
a *de novo* determination that the Union's
oath requirement violated the federal Con-
stitution. It entered a declaratory judg-
ment for Hovan, and the Union appeals.
We note that the issue before us is solely
one of federal constitutional law, for Hovan
has not sought to appeal, nor has he argued
against, the magistrate's rejection of his
statutory claims. *See United States v.
Vega,* 678 F.2d 376, 379 (1st Cir.1982) (*per
curiam*); *Park Motor Mart, Inc. v. Ford*

*Motor Co.,* 616 F.2d 603 (1st Cir.1980). We reverse the district court's judgment on the constitutional issue.

The issue before us has nothing to do with the wisdom or folly of the oath itself, or with the legality of that oath in other contexts. The issue is solely whether the Union's action here in rejecting Hovan's application to attend meetings and call himself a member is "state" or "governmental action." We must look for the presence of "governmental action" because the First Amendment to the federal Constitution forbids the federal *government* from taking certain actions ("Congress shall make no law ..."), and the Fourteenth Amendment, which applies the First Amendment to the states, forbids state *governments* from taking similar actions ("No *state* shall ..."). *See, e.g., Hudgens v. NLRB,* 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196 (1976); *The Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). We do not believe that the actions of the Union here in imposing its oath requirement can be regarded as those of the federal or state governments; hence the Constitution's strictures do not apply.

We approach this case recognizing that it does not involve Hovan's right to a job, to equal pay and working conditions, or even to participate in those collective bargaining decisions that most directly concern him. His employer cannot discharge him for lack of Union membership if he is excluded from membership for political reasons. *See* 29 U.S.C. §§ 158(a)(3), 158(b)(2); *NLRB v. General Motors Corp.,* 373 U.S. 734, 742–43, 83 S.Ct. 1453, 1459, 10 L.Ed.2d 670 (1963). The Union must represent him fairly whether or not he is a member. *See Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) (Railway Labor Act). The Union also agrees that Hovan can participate in the ratification of collective bargaining agreements, despite his lack of union membership. *See Branch 6000, National Ass'n of Letter Carriers v. NLRB,* 595 F.2d 808 (D.C.Cir.1979); *International Brotherhood of Teamsters, Local No. 310 v. NLRB,* 587 F.2d 1176 (D.C. Cir.1978); *cf. Pennsylvania Labor Relations Board v. Eastern Lancaster County Educational Ass'n,* 58 Pa.Commw. 78, 85, 427 A.2d 305 (1981), *cert. denied sub nom. Schreffler v. Pennsylvania Labor Relations Board,* —— U.S. ——, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982). Rather, this case involves only Hovan's desire to attend routine Union meetings and take part in its internal affairs. Thus, Hovan's economic and personal interests in obtaining membership are comparatively weak, while the Union's organizational interest—in maintaining the institutional identity that its current members desire—is comparatively strong.

Moreover, labor organizations have traditionally been considered private, not public, entities. *See, e.g.,* Wellington, *The Constitution, the Labor Union, and "Governmental Action",* 70 Yale L.J. 345, 345 (1961). They were born in an era of governmental hostility, not support, and their strength lies in the organized power of private individuals rather than governmental command. In light of this traditional view, we should expect to find that cases treating unions as if they were "the government" are the exception, rather than the rule.

We are also aware that "constitutionalizing" union actions may bring about extensive change in our economic and political systems, and not necessarily for the better. To find governmental action here would entail treating unions like, say, local school boards or government agencies across virtually the whole range of their activities. Could a union exclude from membership those who favor "right to work" laws? Could it exclude from membership those who intend to work against its existence? *Cf.* 29 U.S.C. § 411(a)(2) (permitting union to adopt "reasonable rules as to the responsibility of every member toward the organization as an institution"). Must it carry out the entire host of special obligations of "fairness" and "process" that typically apply to governmental entities but not to businesses? Even if the substance of constitutional obligations upon unions differed in light of their special purposes, the job of defining the new contours of constitutional protection would fall upon judges who are

often not expert in matters of labor relations. We suspect that to hold union action to be governmental action here would radically change not only the legal, but the practical, nature of the union enterprise.

A "governmental action" finding also would "constitutionalize" many of the statutory provisions of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 401 *et seq.,* particularly those contained in its "Bill of Rights." Doing so might come as a surprise to Congress, which thought the statute necessary to impose the obligations it contains, *see United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 110, 102 S.Ct. 2339, 2344–45, 72 L.Ed. 2d 707 (1982); 105 Cong.Rec. 6472 (1959) (statement of Sen. McClellan), and it would "freeze" those obligations, making modification or revision in light of experience difficult if not impossible. Indeed, a finding of governmental action would not merely "freeze" the LMRDA's Bill of Rights, but would appreciably alter the rights guaranteed by the federal statute. *See Sadlowski, supra* (construing 29 U.S.C. § 411(a)(2) as narrower than the First Amendment).

We believe that these prudential considerations, together with the lack of textual support in the Constitution itself, require us to reject Hovan's constitutional claim in the absence of case law to the contrary. And there is no such case law.

The district court relied chiefly on *Railway Employees' Department v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), and an opinion by this court construing *Hanson, Linscott v. Millers Falls Co.,* 440 F.2d 14 (1st Cir.1970). In *Hanson,* the Supreme Court found that a union-employer agreement, under which the employer was required to discharge a non-union employee for failure to pay union dues, involved "governmental action." The Court reasoned that a federal law, the Railway Labor Act ("RLA"), expressly preempted state laws forbidding union shop agreements, and that the agreement therefore was a direct creation of federal law. The Court wrote:

> If private rights are being invaded, it is by force of an agreement made pursuant

to federal law which expressly declares that state law is superceded. In other words, the federal statute is the source of the power and authority by which any private rights are lost or sacrificed.

.    .    .    .    .

> [T]he 1951 amendment [to the RLA], permitting the negotiation of union shop agreements, expressly allows those agreements notwithstanding any law "of any State." A union agreement made pursuant to the Railway Labor Act has, therefore, the imprimatur of the federal law upon it . . . .

351 U.S. at 232, 76 S.Ct. at 718 (citations omitted); *see Abood v. Detroit Board of Education,* 431 U.S. 209, 218 n. 12, 97 S.Ct. 1782, 1790 n. 12, 52 L.Ed.2d 261 (1977) (interpreting *Hanson* ); Wellington, *supra,* at 354–55. *Hanson* is not on point here, however, for no "private right" of Hovan is "being invaded . . . by force of an agreement made pursuant to federal law which expressly declares that state law is superceded." In fact, Hovan's "rights" are not "being invaded" by "force of" any "agreement" whatsoever.

Nonetheless, in *Linscott,* this court went beyond *Hanson* and held that the terms of a union shop agreement under the National Labor Relations Act were subject to similar constitutional review, even though § 14(b) of the NLRA, unlike the RLA, expressly authorizes states to ban union shops. The court reasoned that:

> If federal support attaches to the union shop . . . when two parties agree to it, it is the same support, once it attaches, even though the consent of a third party, the state, is a pre-condition.

440 F.2d at 16. Other circuits have reasoned differently than *Linscott. See Reid v. McDonnell Douglas Corp.,* 443 F.2d 408, 410–11 (10th Cir.1971). But, we need not call *Linscott* into question to conclude that no governmental action is present here.

In *Linscott,* an employee contested his *discharge under a union shop agreement* for refusal to pay union dues. It was arguable that there would have been no such agree-

ment, and no such discharge, in the absence of the NLRA provision expressly allowing both. *See* 29 U.S.C. §§ 158(a)(3), 158(b)(2). For this reason, one might find a governmental "imprimatur" related to the action that the employee contested. Here, in contrast, there is no such "imprimatur." There is no relevant employer-employee agreement. And to the extent that federal law speaks at all about the question of a union's power to exclude a non-oath-taker from membership, it *protects* Hovan by forbidding his employer from discharging him for this reason, and by requiring the union to represent him. Thus, we cannot see any way in which it might be claimed that the federal government is responsible, in the *Linscott* sense, for the action complained of.

Hovan additionally argues that "governmental action" follows automatically from the fact that the NLRA vests the union with exclusive authority to bargain with Hovan's employer over "rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159(a). Hovan argues that because federal law has stripped him of the right to bargain individually with his employer and vested that right in a union chosen by a majority of the firm's employees, union action (at least with respect to membership) becomes governmental action. Hovan cites *Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), in support of this theory.

In *Steele,* black railway workers challenged the terms of a collective bargaining agreement between a railroad and a union that would have substantially limited job opportunities for black workers. Like the NLRA, the Railway Labor Act contains an exclusive-representation provision, under which the union was vested with exclusive authority to bargain on behalf of all railway workers even though blacks were excluded from the union. The black workers challenged the agreement on equal protection grounds, alleging that the RLA's vesting of exclusive bargaining authority with the union made the union's actions "state action."

The Supreme Court avoided the constitutional issue by construing the RLA to contain a statutory duty of fair representation. However the Court intimated that state action might be involved:

> If ... the Act confers this power [of exclusive representation] on the bargaining representative ... without any commensurate statutory duty toward its members, constitutional questions arise. For the representative is clothed with power not unlike that of a legislature which is subject to constitutional limitations on its power to deny, restrict, destroy or discriminate against the rights of those for whom it legislates and which is also under an affirmative constitutional duty equally to protect those rights.

323 U.S. at 198, 65 S.Ct. at 230; *see Vaca v. Sipes,* 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967) ("grave constitutional problems" would have arisen in *Steele* if unions were statutorily free to use their federally created bargaining power to further racial discrimination).

This language does not help Hovan, however, for *Steele* concerns a union's failure to *represent* a non-member; it does not concern a union's failure to admit to formal *membership* one whom it is concededly ready, willing, and able to represent. *Steele* explicitly distinguished between union *representation,* which it found was governed by law, and union *membership,* which it found was not so governed. The Court stated that while the RLA imposed a statutory duty of fair representation, "the statute does not deny to ... a bargaining labor organization the right to determine eligibility" for membership. *Steele,* 323 U.S. at 204, 65 S.Ct. at 233; *see Smith v. Local No. 25, Sheet Metal Workers International Association,* 500 F.2d 741, 750 (5th Cir.1974) (no union obligation under NLRA to admit all employees to union); *Moynahan v. Pari-Mutuel Employees Guild of California, Local 280,* 317 F.2d 209, 211 (9th Cir.) ("*Steele* does not impose upon a union the duty to open wide its doors to anyone."), *cert. denied,* 375 U.S. 911, 84 S.Ct. 207, 11 L.Ed.2d 150 (1963); R. Gorman, *Basic Text*

on *Labor Law* 706 (1976). *But cf.* Wellington, *supra,* at 372–74. If *Steele* is read to embody implicitly a constitutional judgment about the representation requirement, it must then be read to suggest no such requirement with respect to membership. Its language intimates that the link between the union's federally created bargaining power and its membership requirements is too distant to impose constitutional restrictions. Insofar as the union's representation function is distinct from the membership requirement, the latter does not so directly involve the union's statutorily granted representational powers and thus would not necessarily come accompanied with the same obligations. *But see* Wellington, *supra,* at 373–74 (suggesting that fair representation depends on ability to participate in the union's internal political processes); *cf. Retana v. Apartment & Elevator Operators Local No. 14,* 453 F.2d 1018, 1024 (9th Cir.1972) ("intra-union conduct could not be wholly excluded from the duty of fair representation").

We are aware of no other basis for a finding of "governmental action" here. The federal government certainly was not directly responsible for the challenged private act under a "nexus" theory. *See Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d 447 at 450 (1st Cir.1983) ("the party seeking to establish that action of a private party violated the Constitution [under a 'nexus' theory] must be able to point to the specific act or actions of the government which in fact motivated the private action"); *cf. Turner v. Air Transport Lodge 1984,* 590 F.2d 409, 413 n. 1 (2d Cir.1978) (*per curiam*) (Mulligan, J., concurring) ("[S]ince union constitutions and rules are formulated and enforced by the union, a private entity, no federal constitutional right of free speech is . . . involved."), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2841, 61 L.Ed.2d 286 (1979). Nor has the government "so far insinuated itself into a position of interdependence with [the union] that it must be recognized as a joint participant in the challenged activity." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961);

see *Gerena,* at 450–451. There is no such interdependence or joint participation here. The mere fact that the federal government may have encouraged the development of trade unions and collective bargaining in the past fifty years does not mean that it has become a joint participant in the general activities of individual unions. To adopt a contrary position, as previously pointed out, would "constitutionalize" virtually every activity of a union. The Constitution has not been held to call for such a result.

Our conclusion that the Union's actions here do not involve "governmental action" thus is consistent with prudential considerations, with precedent, and with the Constitution's vision of politics and society as well. The Constitution allows power to be exercised not only by governmental entities, subdivisions, and individuals, but also by a host of other entities, firms, organizations, and associations. Such organizations, by possessing power themselves, may help individuals to counterbalance the power of governments and of each other. That is at least one reason why the individual's right to "association" is constitutionally protected. *See generally,* Douglas, *The Right of Association,* 63 Colum.L.Rev. 1361 (1963). Treating all such associations as if they were, constitutionally speaking, "governments" runs counter both to the Constitution's text, and the constitutional design of dispersed and countervailing powers.

We note in closing that we are not leaving Hovan without legal protections in his relationship with the Union. As pointed out above, both his employer and the union are under substantial obligations not to discriminate against him because of his exclusion from Union membership. We do not have before us the question of whether the Bill of Rights of the LMRDA affords any protection to an employee in Hovan's position. We hold only that the Union's oath requirement, under the circumstances present here, is not "governmental action" and therefore is not subject to the restrictions of the First and Fourteenth Amendments.

*The judgment of the district court is reversed.*