**Edmund G. STORLAZZI, Plaintiff,**

v.

**Janice BAKEY, et al., Defendants.**

**Civ. A. Nos. 89–1306–NG, 93–10524– NG and 93–11046–NG.**

United States District Court, D. Massachusetts.

April 25, 1995.

Joan M. Chaisson, Auburndale, MA, Harold Robertson, Harmon & Robertson, Boston, MA, for Edmund G. Storlazzi.

Rodney E. Gould, Rubin, Hay & Gould, Framingham, MA, for Doris Cremins, Charles Lyons, George Buckley, Daniel Kelley, Deborah Ferraro, Steven Conroy, Richard Kraus, Linda Braun, William A. Carey, Jr., Kathleen Dias, William J. O'Brien, Michael Peters, Jr., Alexander Wilson, Patricia B. Worden, Katherine Fennelly, Michael Healey, Janice Bakey, David W. McKenna, Stephen Moss, Walter Devine, Stephen Dlott, Harold Fairbanks, Richard Hall, John Kent, Vincent D'Antona, Richard Collomb, Arlington School Bd.

Americo A. Salini, Jr., Mass. Teachers Ass'n, Boston, MA, for Ellen Pratt, Virginia Fuller, Ann Tierney, Suzanne Nocella, Dorothy Galluzzo, Kathleen O'Connell, Madeline Powers, Lawrence Greco, Linda Verity.

### MEMORANDUM AND DECISION

GERTNER, District Judge.

## I. INTRODUCTION

This case stems from statements made by the plaintiff Edmund G. Storlazzi and certain actions allegedly taken in retaliation for those statements by Storlazzi's employer, the Arlington School Committee. Plaintiff alleges a violation of his First Amendment rights, and sues to redress that violation under 42 U.S.C. § 1983. In addition, Storlazzi alleges the existence of a conspiracy to deprive him of his First Amendment rights between the Arlington School Committee, the Arlington Education Association (the "Union") and the Massachusetts Teachers Association ("MTA"). Plaintiff also alleges certain state law violations.

Before me now are the defendants' motions for consolidation and summary judgment. For the foregoing reasons both motions are **GRANTED**.

## II. PROCEDURAL POSTURE

The initial Complaint—(Civil Action 89–1306) filed on June 15, 1989—alleges: (1) A violation of § 1983 (deprivation of First Amendment rights) (Count I); (2) a breach of the Collective Bargaining Agreement ("CBA") by the School Committee (Count II); (3) a breach of a 1982 Settlement Agreement by the School Committee (Count III); (4) a breach of the duty of fair representation by the Arlington Education Association (the local union representing the plaintiff) (Count IV); (5) defamation (Count V); and, (6) intentional infliction of emotional distress

(Count VI). The 1989 case named past and present members of the Arlington School Committee, past and present administrators of Arlington High School, and past and present members of the Arlington Education Association[1] (hereafter "*Storlazzi I*"). *Storlazzi I* sought monetary and injunctive relief for alleged harassment and discrimination in retaliation for the plaintiff's speech.

On December 16, 1991, Storlazzi moved to amend the Complaint by adding a claim based upon his termination from employment as a result of a reduction in force ("RIF") at the Arlington High School. On January 8, 1992, Magistrate Judge Bowler denied plaintiff's motion to amend without prejudice. While the defendants' motion for summary judgment was pending in *Storlazzi I*, the plaintiff filed a new suit repeating many of the same allegations in *Storlazzi I* and adding a claim for relief based upon the RIF. That case[2]—Civil Action 93–10524, filed on March 19, 1993—named the members of the School Committee, the High School Administration and the Union. The Complaint alleged: (1) A due process violation for failing to provide notice and a pre-termination hearing; a deprivation of his First Amendment rights by selecting him for a reduction in force (Count I); (2) deprivation of his rights under the Massachusetts Civil Rights Act (Count II); (3) intentional interference with contract (Count III); and, (4) intentional infliction of emotional distress (Count IV) (hereafter "*Storlazzi II*").

On May 12, 1993, Storlazzi began a third action in this Court. Here, Storlazzi alleges:[3] (1) That the School Committee failed to adequately train the administration officials so as to prevent the alleged retaliatory action taken (Count I); (2) that the School Committee breached the Collective Bargaining Agreement (Count II); (3) that the Union and the Massachusetts Teachers Association (the state teacher's union) breached their duty of fair representation (Count III); and, (4) a violation of the Massachusetts Civil Rights Act (Count IV) (hereafter "*Storlazzi III*").

In addition to these civil actions commenced in the district court, the issue of whether the School Committee violated the CBA in selecting Storlazzi for the 1990 RIF (the central issue in *Storlazzi II*) was "litigated" in a binding arbitration pursuant to the Collective Bargaining Agreement between the Arlington School Committee and the Arlington Education Association. On June 11, 1993, four days prior to instituting *Storlazzi III*, the arbitrator determined that no violation had occurred.

### III. *SUMMARY OF FACTS*

Edmund G. Storlazzi taught history/social studies in the Arlington High School from 1970 until 1990. Storlazzi received tenure in 1973. Prior to 1973, Storlazzi served as both a teacher and, for some time, an administrator in the Arlington High School. In 1976, Storlazzi filed a complaint against the School Committee in federal court alleging retaliatory action taken against him as a result of his decision to leave the school administration and return to teaching. In 1982, the School Committee and Storlazzi reached an agree-

---

1. The named defendants are: Janice Bakey, Doris Cremins, Charles Lyons, George Buckley, Daniel Kelley, Deborah Ferraro, Steven Conroy, Richard Kraus, Linda Braun, William Carey, Jr., Kathleen Dias, William J. O'Brien, Michael Peters, Jr., Alexander Wilson, Patricia B. Worden, Katherine Fennelly, Michael Healey, David W. McKenna, Stephen Moss (all members of the School Committee), Walter Devine (School Superintendent), Stephen Dlott (High School Principal), Harold Fairbanks (an Acting High School Principal), Richard Hall, John Kent (History Department Head), Vincent D'Antona (Guidance Counselor), Richard Collomb (House Dean), Virginia Fuller, Ann Tierney, Suzanne Nocella, Dorothy Galluzzo, Kathleen O'Connell, Madeline Powers, Lawrence Greco, Linda Verity and Ellen Pratt (members of the Arlington Education Association).

2. The Complaint named Walter Devine, John Kent, Virginia Fuller and Charles McCarthy as defendants. At the time of filing, the defendants were employed as Superintendent of the Arlington Schools, Chairperson of the Social Studies department at Arlington high school, President of the Arlington Education Association (the "Union"), and Principal of Arlington High School respectively.

3. The Complaint named as defendants: The Arlington School Committee; the Arlington Education Association; and the Massachusetts Teachers Association.

ment settling the litigation (the "Settlement Agreement"). As a result of the Settlement Agreement, the School Committee agreed to remove certain documents from Storlazzi's personnel file.

In 1985, Storlazzi began to criticize the School Committee and the Arlington High School Administration (the "Administration") for various policies and procedures. Among these criticisms were complaints about the use of alcohol by students in the high school, the locking of student lavatories; the policy of notifying teachers in advance of observations; and, the grading and administration of final exams. The above list is not exhaustive of Storlazzi's alleged First Amendment activities which are more fully discussed in Section VII *infra*.

The plaintiff's conduct continued from 1985 through 1989. According to the Complaints, the School Committee and the Union engaged in a conspiracy to deprive the plaintiff of his constitutional rights by retaliating against him for his outspokenness. That retaliation included changing his class schedule, removing students from his classes; denying him access to the grievance/arbitration process; terminating his employment, and failing to recall him as a teacher. This description is not a complete list of the alleged retaliatory conduct which is discussed more fully in Section VII *infra*.

In May, 1990, the School Committee laid off teachers. As per the Collective Bargaining Agreement, the School Committee gave due weight to the seniority of individual teachers. A more senior teacher could only be "RIFFED" upon a prior determination that a "significant difference" existed in the performance of the senior teacher and his junior colleagues. Defendant John Kent (Chairperson of the Social Studies Department) made such a determination and Storlazzi was "RIFFED." Storlazzi followed the grievance procedure of the CBA and the Union pursuing arbitration on the issue on his behalf. After a four day trial, the arbitrator found that the Administration's determination that a significant difference existed between Storlazzi and the more junior teachers was rational and consistent with the plaintiff's performance evaluations.

In June, 1990, as a result of increased funding, the School Committee recalled certain teachers it had "RIFFED" the previous May. Storlazzi was not recalled. The plaintiff claims that the decision not to rehire him was further retaliation for his First Amendment activity. The School Committee argues that the failure to recall is an issue covered by the terms of the Collective Bargaining Agreement, that in order to challenge the decision, Storlazzi was bound to follow the CBA grievance procedure, and he did not.

## IV. CONSOLIDATION

■ On May 31, 1994 the defendants filed a motion pursuant to Rule 42 of the Federal Rules of Civil Procedure to consolidate the three actions brought by Storlazzi. Consolidation under Rule 42 is proper when "actions involving a common question of law or fact are pending before the court." In addition, the decision to consolidate cases is one generally left to the discretion of the trial judge. *New England Energy Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 7 (1st Cir.1988) ("Rule Civ.P. 42 . . . allows consolidation if there is a common question of law or fact. If this requirement is met, a court typically has broad discretion to decide whether consolidation is appropriate.") *See, e.g., Sutcliffe Storage & Warehouse Co. v. U.S.*, 162 F.2d 849, 851 (1st Cir.1947).

■ Plaintiff concedes that consolidation of *Storlazzi II* and *Storlazzi III* is appropriate. Nevertheless, he contends that it is inappropriate for the Court to consolidate all three matters because the 1993 claims (*Storlazzi II* and *Storlazzi III*) involve "new, discrete, actionable, substantial and separable wrongs inflicted on Storlazzi by different defendants well after the commencement of the 1989 action (*Storlazzi I*)." Finally, the plaintiff argues that his trial on the 1989 claim should not be postponed while *Storlazzi II & III* complete discovery. If consolidation were granted, the plaintiff argues, his right to "just, speedy and inexpensive litigation" will be prejudiced.

Despite the fact that a new theory of liability is advanced in the most recent case (*Storlazzi III*)—the so-called failure to train is-

sue—the heart of the plaintiff's claims in all three actions rests on related violations of 42 U.S.C. § 1983 against the same or related actors. Moreover, the alleged deprivations of rights at issue all involve actions taken in retaliation against the plaintiff's exercise of free speech rights. In the interest of judicial economy and efficiency, and a concern over piece-meal litigation, I **GRANT** the motion to consolidate all three matters. *Huene v. U.S.*, 743 F.2d 703, 704 (9th Cir.1984) ("The district court, in exercising its broad discretion to order consolidation of actions presenting a common issue of law or fact under Rule 42(a), weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause.").

## V. THE SUMMARY JUDGMENT STANDARD

Summary judgment should be granted where all of the relevant pleadings, viewed in the light most favorable to the non-moving party, present no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Alan Corp. v. International Surplus Lines Insurance Co.*, 22 F.3d 339, 342 (1st Cir.1994); *Aponte–Santiago v. Lopez Rivera*, 957 F.2d 40, 41 (1st Cir.1992); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990).

## VI. PRIVATE ACTORS: UNION DEFENDANTS AND CONSPIRACY STORLAZZI I (COUNT I); STORLAZZI II (COUNT I), AND STORLAZZI III (COUNT I)

In order to state a claim under § 1983, a plaintiff must show both the existence of a federal constitutional or statutory right, and a deprivation of that right by a person acting under color of state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). *Watterson v. Page*, 987 F.2d 1, 7 (1st Cir. 1993) (*citing Willhauck v. Halpin*, 953 F.2d 689, 703 (1st Cir.1991)).

There is no question that retaliatory action taken against a public employee for constitutionally protected statements is a deprivation of rights secured by the federal constitution. *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1986) (finding political statement by employee protected speech and firing in retaliation violated First Amendment rights). In addition, there is no question that the members of the School Committee and the Arlington High School Administration are state actors for purposes of § 1983. *Rockwell v. Cape Cod Hospital*, 26 F.3d 254, 256–258 (1st Cir.1994) (discussing the state action requirements for § 1983 relief). The issue before me is whether the Union defendants alone or in concert with the state actors acted "under color of state law" sufficient to support a suit against them based on § 1983. As the First Circuit stated in *Gerena v. Puerto Rico Legal Services, Inc.*, "[T]he party seeking to establish that action of a private party violated the Constitution must be able to point to the specific act or actions of the government which in fact motivated the private action." 697 F.2d 447, 450 (1st Cir.1983).

In the summary judgment posture, the plaintiff may not merely rely on the allegations set forth in the Complaint. Rather, Storlazzi must satisfy his burden of production by setting forth specific evidence which illustrate that a genuine issue of material fact exists. *Tauvar v. Bar Harbor Cong. of the Jehovah's Witnesses, Inc.*, 633 F.Supp. 741, 747 (D.Me.1985) *affirmed* 787 F.2d 579 (1st Cir.1986) *cert denied* 479 U.S. 1038, 107 S.Ct. 894, 93 L.Ed.2d 846 ("For purposes of satisfying the § 1983 requirement of action under color of state law, the plaintiff must plead in some detail, through reference to material facts, the relationship or nature of the cooperation between the state actors and the private individuals."). *See McGillicuddy v. Clements*, 746 F.2d 76, 77 (1st Cir.1984).

In the present case, Storlazzi attempts to satisfy the state action requirement of § 1983 by alleging a conspiracy between the School Committee and the Union defendants. Storlazzi alleges that Defendants Fuller (the President of the Union) and Devine (School Superintendent) acted in concert when Fuller denied Storlazzi's request to take certain

complaints against the School Committee to arbitration. Apart from the allegation that Fuller and Devine "acted in concert," Storlazzi has not satisfied his burden of pleading or proffering any evidence that Devine compelled or even encouraged Fuller to deny Storlazzi's requests. Since Storlazzi failed to show the required nexus between the private actors and the state actors, his claim for relief against the Union defendants must fail. *See Leahy v. Board of Trustees,* 912 F.2d 917 (7th Cir.1990) (finding that union was not acting under color of state law and therefore § 1983 claim was barred); *Hovan v. United Brotherhood of Carpenters and Joiners,* 704 F.2d 641, 641 (1st Cir.1983) (finding union's rejection of plaintiff's membership application not state action for purposes of the First Amendment).

Accordingly the Union defendants' motion for summary judgment on Count I (of *Storlazzi I* ), Count I (of *Storlazzi II* ) and Count I (of *Storlazzi III* ) are hereby **GRANTED.**

**VII.** *PUBLIC ACTORS: THE SCHOOL COMMITTEE & MEMBERS OF THE ADMINISTRATION (COUNT I, STORLAZZI I; COUNT I STORLAZZI II)*

**A.** *Storlazzi I.*

**1.** *Whether Storlazzi's Speech is Subject to Protection under the First Amendment.*

A state entity may not deprive an employee of his employment interest in retaliation for statements protected by the First Amendment. *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (finding teachers do not give up First Amendment rights they would otherwise enjoy as private citizens). As the Fourth Circuit recently stated:

Plaintiffs asserting such First Amendment retaliatory discharge ... claims must establish three elements to state a claim under Section 1983: (1) that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern; (2) that the alleged retaliatory action deprived him of some valuable benefit; and (3) that there was a causal

relationship between the protected expression and the retaliatory action.

*Wagner v. Wheeler,* 13 F.3d 86, 89 (4th Cir. 1993). Once the plaintiff satisfies that burden, the burden shifts to the defendant to establish that the decision regarding plaintiff's employment would have been the same regardless of the plaintiff's protected speech. *Mt. Healthy v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The defendant must make this showing by a preponderance of the evidence. *Id. See also; Acevedo–Diaz v. Aponte,* 1 F.3d 62, 66 (1st Cir.1993) (reciting the standard under *Mt. Healthy*); *Lovelace v. Southeastern Massachusetts University,* 793 F.2d 419, 425–426 (1st Cir.1986) (discussing the appropriateness of decision not to rehire the plaintiff).

In the present case, the plaintiff alleged that the defendants engaged in various acts in retaliation for plaintiff's protected expression. The alleged protected statements included: (1) criticism of the lowering of academic standards at the high school; (2) criticism of the school ground maintenance policy; (3) criticism of policy giving teachers prior notice of observation; (4) criticism of student placements in college preparatory courses; (5) criticism of school policy of locking certain student lavatories; (6) criticism of final exam formats; (7) criticism of administrators changing students grades; (8) plaintiff's testimony at a public hearing of the Arlington School Committee regarding a grade change of one of his students; (9) plaintiff's statements to the School Committee which "informed" the Committee that certain administrators had lied at a School Committee hearing; (10) information plaintiff gave to a local paper concerning alcohol abuse by students at the high school; (11) information plaintiff gave the School Committee regarding the grading improprieties at the High School; (12) an inquiry plaintiff began into payroll attendance procedures; (13) an interview plaintiff gave to the local media regarding grade issue; (14) an appearance plaintiff made before a local Council on Aging and the Board of Selectmen to present his proposal to bifurcate a planned Proposition 2½ override which would allow separate voting for general and school issues and his criticism of the school administration; (15)

discussion plaintiff had with a member of the long-range planning committee criticizing school administration and policies; and, (16) a letter plaintiff wrote which was published in a local newspaper regarding Proposition 2½.[4]

 In order to rise to the level of protected speech, the statements must be conveyed "by the teacher in his role as a citizen and not in his role as an employee of the school district." *Kirkland v. Northside Independent School District,* 890 F.2d 794, 798–799 (5th Cir.1989) (finding teacher's supplemental reading list not a matter of public concern and therefore not protected speech) *cert. denied* 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990). The determination of whether the speech at issue is constitutionally protected is for the Court's resolution. *Connick v. Myers,* 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 1690 n. 7, 75 L.Ed.2d 708 (1983) (holding employee's First Amendment rights were not violated when fired for distribution of non-protected material).

### a. Statements 1–9, 11 & 12

 With respect to items 1–9, 11 & 12 above, the Court finds that these statements are not protected speech under *Mt. Healthy* and its progeny. Each instance of expression represents speech made in Storlazzi's capacity as an employee. That is, each criticism of administration policy—whether it regarded grading, student placement, locking lavatories or ground maintenance—reflected Storlazzi's dissatisfaction as a member of the school system. Therefore, because none of these statements can be said to involve "speech on public issues ... entitled to special protection" *Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983), the defendants' alleged "retaliation" with respect to them is not actionable under § 1983. *See Kirkland,* 890 F.2d at 799 ("If the nature of the speech is purely private ... judicial inquiry then comes to an end, and the question of whether the employee's speech was a substantial or motivating factor

in the decision not to rehire him need not even be reached.").

### b. Statements 10, 13, 14, 15 and 16

 With respect to Storlazzi's comments regarding Proposition 2½; the overall grading policy of the Arlington School System; and the use of alcohol by students, I find those statements were sufficiently "public" in nature to rise "to the highest rung of [the] hierarchy of First Amendment values and [are] entitled to special protection." *Kirkland, supra* at 797 (*quoting Connick, supra* at 145, 103 S.Ct. at 1689).

### 2. Whether Storlazzi Articulated the Causal Link between his Protected Speech and the Retaliatory Action.

 In addition to establishing that statements 10, 13, 14, 15 & 16 constitute protected speech, the plaintiff still must demonstrate the causal link between the protected statements and the alleged retaliatory conduct. *Mt. Healthy, supra* at 287, 97 S.Ct. at 576; *O'Connor v. Steeves,* 994 F.2d 905, 917 (1st Cir.1993) (discussing the *Mt. Healthy* causation requirement). As the First Circuit stated in *Acevedo–Diaz v. Aponte:*

> In a ... [First Amendment retaliation] case, plaintiffs must bear the threshold burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that plaintiff's constitutionally protected conduct ... was a 'substantial' or 'motivating' factor behind their dismissal.

1 F.3d 62, 66–67 (1st Cir.1993). The First Circuit described the "substantial" or "motivating" factor test as a " 'but for' causation test." *Id.* at 66.

 At the hearing held on June 2, 1994, the Court requested that the plaintiff specify the linkage between the so-called retaliatory acts and his protected speech. In the supplemental memorandum filed in response, Storlazzi relies solely on allegations made in the Complaint. He attempts to satisfy his

---

4. All the above statements or expressions were culled from the Plaintiff's Supplemental Memorandum–Chronology Opposing Summary Judg-

ment filed at the Court's request following the June 2, 1994 hearing.

burden of causation by merely restating the general averments made in his original filing and relying solely on the temporal proximity of the protected statement to the alleged retaliatory conduct. Nowhere does Storlazzi point to any independent facts to support the allegation that his protected speech substantially motivated the School Committee to punish him. In the context of this case, these allegations alone are not enough to defeat the defendants' motion for summary judgment. *Jirau–Bernal v. Agrait,* 37 F.3d 1, 3–4 (1st Cir.1994) (finding summary judgment inappropriate where employee offered direct evidence of discriminatory motivation from third party affiant); *Kauffman v. Puerto Rico Telephone Company,* 841 F.2d 1169, 1172 (1st Cir.1988) (affirming summary judgment for the employer where the only evidence of causation was the fact that similarly situated employees were not fired).

### 3. Whether Defendants have Demonstrated that the Decision would have been the Same Regardless of Plaintiff's Protected Speech.

In addition to the plaintiff's failure to establish a causal link between the protected expression and the retaliation taken, the defendants offered legitimate justifications for their action, which provided a complete explanation for their action. *Mt. Healthy, supra* at 287, 97 S.Ct. at 576. As the First Circuit stated in *Acevedo–Diaz:*

> [T]he defendant-employer's *Mt. Healthy* defense, ensures that a plaintiff-employee who would have been dismissed in any event on legitimate grounds is not placed in a better position merely by virtue of the exercise of a constitutional right irrelevant to the adverse employment action.

1 F.3d at 66 (internal quotations omitted).

▆▆ Based on the record before me, it is clear the defendants have established legitimate justification for the acts of the High School Administration, and further, that those acts would have occurred regardless of plaintiff's protected speech. The acts in question are the administration's decision to: (1) give the plaintiff lower teacher evaluations; (2) change certain students' grades; (3) transfer students from the plaintiff's classes; (4) make the plaintiff supervise his own detention halls; (5) modify the plaintiff's course assignments; (6) remove the plaintiff from a particular class; (7) require the plaintiff to justify his teaching methods; (8) deny the plaintiff access to certain student records and school equipment; and, (9) maintain certain documents in the plaintiff's file which should have been removed according to an agreement reached between the parties in March of 1982.

The defendants' rational bases for engaging in the behavior included: (1) complaints from parents and teachers; (2) adjustments in scheduling due to declining enrollment; (3) plaintiff's own desire for an 80% course load; and (4) internal administrative procedures (for such matters as detention hall monitoring).

Therefore, even if Storlazzi succeeded in establishing a *prima facie* case of First Amendment retaliation, which he has not, his claim fails due to the defendant's legitimate justification defense, which was not adequately challenged as pre-textual. *Acevedo–Diaz,* 1 F.3d at 66; *Mt. Healthy,* 429 U.S. at 284, 97 S.Ct. at 574.

### B. Storlazzi II.

#### 1. The Reduction in Force.

With respect to the decision to RIF Storlazzi despite his seniority, the School Committee argues that: (1) the plaintiff failed to show a causal nexus between the protected speech and the action taken; and (2) that the reasons given by the School Committee were legitimate, lawful reasons.

With respect to the causation issue, Storlazzi here again fails to show "that [his statements were] a motivating factor in the decision not to rehire." *Ward v. Hickey,* 996 F.2d 448, 451 (1st Cir.1993). Like the allegations in *Storlazzi I,* when asked by the Court to address this issue, the plaintiff merely restated the allegations in the Complaint. That is insufficient to survive summary judgment where the plaintiff "must set forth specific facts" showing that a genuine issue exists as to his employer's motivation for making the employment decision. *See* Fed. R.C.P. 56(e); *Jirau–Bernal,* 37 F.3d at 3–4.

■ Moreover, the defendants argue that the decision to select the plaintiff for the RIF was based upon a finding of a "significant difference" between Storlazzi and his more junior colleagues; and therefore, a legitimate justification for his inclusion in the RIF existed. The defendants point to the decision of the arbitrator which determined that the finding of a "significant difference" was reasonable and did not violate the terms of the collective bargaining agreement. Although I find that no preclusive effect should be given to the decision of the arbitrator, *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (holding that an unappealed arbitration award will not preclude a case brought under § 1983), I do give deference to certain factual determinations she made. For example, the arbitrator's 70 page decision evaluated the statistical relationship between the plaintiff's teacher evaluations and those of his more junior colleagues. Such technical or fact specific findings should be afforded due deference. *See, Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 222, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985) (finding deference to an arbitral decision appropriate where "the issue is solely one of fact, specifically addressed by the parties on the basis of an adequate record.").

## 2. Due Process.

■ Storlazzi rests his due process claim on the fact he received the letter notifying him of his termination one day after a School Committee hearing on the issue. To state a claim under § 1983 for a deprivation of property without due process, the plaintiff must articulate both a recognized property interest, and that the defendants deprived the plaintiff of that interest without due process. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) ("Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.") *quoting Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Cotnoir v. University of Maine Systems*, 35 F.3d 6, 10 (1st Cir. 1994) (discussing the elements for a § 1983 suit based on due process violation).

■ Massachusetts General Law ch. 71 § 42[5] entitles tenured public school teachers to pre-termination notice and a hearing at which he may be represented by counsel. However, the statute specifically exempts teachers who are terminated as a result of a reduction in force. *Sherman v. School Committee of Whitman*, 26 Mass.App.Ct. 903, 903 n. 2, 522 N.E.2d 433 (1988) ("By reason of the fifth sentence of G.L. c. 71, § 42, the school committee had no obligation to afford a hearing to a teacher discharged because of a decline in school enrollment or because of budgetary considerations.") (internal citations omitted); *Boston Teachers Local 66 v. School Comm. of Boston*, 386 Mass. 197, 215–216, 434 N.E.2d 1258 (1982). Therefore, any property interest Storlazzi retained stemmed from the terms of the Collective Bargaining Agreement relating to reductions in force.

According to Article XXVIII of the CBA, prior to "RIFFING" Storlazzi (a tenured teacher) the School Committee must determine that there is a "significant difference in [his] performance as evidenced by evalua-

5. Mass.Gen.Law ch. 71 § 42 provides in relevant part:

The school committee may dismiss any teacher, but no teacher and no superintendent, other than a union superintendent and the superintendent of schools in the city of Boston, shall be dismissed unless by a two thirds vote of the whole committee. A teacher not employed at discretion under the preceding section and who has been teaching for more than ninety days shall not be dismissed for any reason unless at least fifteen days, exclusive of customary vacation periods, prior to the meetings at which the vote is to be taken, he shall have been notified of such intended vote and, if he so requests, he shall have been furnished by the committee with a written statement of the cause or causes for which the dismissal is proposed and if he so requests, he has been given a hearing before the school committee at which he may be represented by counsel, present evidence and call witnesses to testify in his behalf and examine them, and the superintendent shall have given the committee his recommendation thereon ... Neither this nor the preceding section shall affect the right of a committee to dismiss a teacher whenever an actual decrease in the number of pupils in the schools of the town renders such action advisable.

tions during the previous five (5) years." The School Committee, did just that, and in fact, determined that a "significant difference" existed between Storlazzi and his more junior colleagues that were retained; and the arbitrator affirmed that decision. Decision of the Arbitrator at p. 72. Therefore, the process due Storlazzi stemmed from the terms of the CBA.[6] Since the School Committee complied fully with those terms, the plaintiff's due process challenge must fail.

Based upon Storlazzi's failure: (1) to articulate a causal connection between the protected speech and his RIF and the fact that the School Committee offered a legitimate justification for its decision to RIF Storlazzi not shown to be pretextual; and (2) the Court's finding that the grievance/arbitration procedure satisfied the defendant's due process rights under the CBA, the defendants' motion for summary judgment on Count I in *Storlazzi II* is **GRANTED.**

### C. *Storlazzi III*

#### 1. *The Recall*

As to Storlazzi's claim that the School Committee retaliated against him by not recalling him to teach, I find that the plaintiff failed to satisfy his burden of showing that his protected speech was a "substantial or motivating factor" in the School Committee's decision not to recall him. As I indicated above, the plaintiff failed to articulate any evidence (direct or circumstantial) that his protected statements were the "substantial motivation" for the termination decision.

The defendants offered substantial evidence that Storlazzi's termination was based upon a determination of a "significant difference" between himself and less senior colleagues. The finding of a "significant difference" rested on the plaintiff's teaching evaluations over a five year period (1985–1990).

Since Storlazzi failed to establish the causal link between his protected speech and his termination, he faces an uphill battle on his claim for failure to recall. He must establish that despite the legitimate justification for his termination, the decision not to recall him was "substantially motivated" by his protected speech. *Acevedo–Diaz,* 1 F.3d at 66. *See also, Jirau–Bernal,* 37 F.3d at 3.[7]

Storlazzi failed to offer any evidence to support this element. Accordingly, Storlazzi failed to state a *prima facie* case for First Amendment retaliation as a result of the School Committee's decision not to recall him. *Acevedo–Diaz v. Aponte,* 1 F.3d at 66.[8]

#### 2. *Failure to Train*

The issue here is whether the plaintiff has a cognizable claim under § 1983 for retaliation as a result of the School Committee's failure to adequately train its employees. In the simplest terms, Storlazzi alleges that the Administration failed to adequately train its management employees not to discriminate against teachers who speak out. In *Monell v. New York Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), the Supreme Court considered whether local governments may be liable under § 1983 for the unconstitutional conduct of their employees. According to

---

**6.** Article XXVIII states:

"G. Except in unusual circumstances, a teacher so affected by a reduction in staff shall be notified by April 15 of the school year preceding the school year in which the reduction is to be affected, but in no event, later than May 15."

Storlazzi received notice of his inclusion on the RIF list on May 16, 1990. The other "RIFFED" teachers received notice by hand in their classrooms on May 11, 1990. However, due to extended sick leave, Storlazzi's notice was sent certified mail to his home. Storlazzi's extended sick leave amounts to "unusual circumstances" contemplated in Article XXVIII. Moreover, I find that the School Committee's one day delay in providing Storlazzi notice was not violation of his due process rights.

**7.** Even if the plaintiff were capable of producing such evidence, the Administration would have an

opportunity to offer proof that the decision not to recall Plaintiff would have occurred without the protected speech (the *Mt. Healthy* defense). Here, as in the initial decision to layoff, the Administration would point to Storlazzi's poor evaluations as a reason not to recall him unrelated to his protected speech.

**8.** The failure to recall "RIFFED" teachers is covered by Article XXVIII of the CBA. According to the agreement, in order to challenge the decision not to recall, Storlazzi would first be required to satisfy the administrative grievance procedures by filing a grievance within thirty days of the decision not to recall. The record indicates that Storlazzi failed to grieve the recall decision.

the Court, a municipality is not responsible for the torts of its employees under a theory of *respondeat superior.* Rather, municipal liability under § 1983 is only proper when an "official municipal policy of some nature caused a constitutional tort." Id at 691. Therefore, the plaintiff is required to show both a policy or custom of the municipality and a causal connection between the policy and the constitutional deprivation suffered by the plaintiff. *Santiago v. Fenton,* 891 F.2d 373, 381 (1989) (discussing the requirements for municipal liability); *City of Canton, Ohio v. Harris,* 489 U.S. 378, 384, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989).

Here, Storlazzi failed to satisfy his burden of proving that the members of the School Committee themselves retaliated against him for his protected speech. (See section VII A *supra* ). As a result, Storlazzi failed to articulate a *prima facie* case for a constitutional deprivation based on the First Amendment. *Acevedo–Diaz,* 1 F.3d at 66. Therefore, since he failed to establish that the School Committee's decision to terminate his employment was "substantially motivated" by his protected speech, he cannot—*a fortiori*—establish that a the municipality's failure to train its administrators (assuming such a policy exists) caused him constitutional harm. *Santiago,* 891 F.2d at 381. Accordingly, the defendants' motion for summary judgment on Count I of the Complaint in *Storlazzi III* is **GRANTED.**

## VIII. *DUTY OF FAIR REPRESENTATION*

■ In Count IV of *Storlazzi I,* the plaintiff alleges a breach of the duty of fair representation against the Union. In addition in Count III of *Storlazzi III* Storlazzi alleges a hybrid violation of 29 U.S.C. § 185 for breach of the duty of fair representation against the Union and the MTA and the breach of the Collective Bargaining Agreement by the School Committee. Because the plaintiff was employed by a "political subdivision" within the meaning of 29 U.S.C. § 152, both these

claims are exempted from this Court's jurisdiction.

29 U.S.C. § 185 provides plaintiffs with a private cause of action against their "employer and a labor organization representing employees in an industry affecting commerce." However, the definition section, 29 U.S.C. § 152, specifically exempts from the definition of employers "any State or political subdivision thereof." Therefore, Storlazzi's claim under 29 U.S.C. § 185 will fail as a matter of law if the Arlington School Committee is exempt from the statute.

■ "Political subdivisions," under 29 U.S.C. § 152(2) are "entities that are either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *Chaparro–Febus v. International Longshoremen Ass'n,* 983 F.2d 325, 329–330 (1st Cir.1993) (describing the elements for a hybrid duty of fair representation and collective bargaining agreement claim).

■ Since the School Committee Defendants are public officials responsible to the general electorate of the town of Arlington, they are part of "political subdivisions" specifically exempt from the federal jurisdiction of this Court.[9] *See, Police Department of the City of Chicago v. Mosley,* 408 U.S. 92, 102 n. 9, 92 S.Ct. 2286, 2294 n. 9, 33 L.Ed.2d 212 (1972) ("The city now recognizes that the National Labor Relations Act specifically exempts States and subdivisions (and therefore cities and their public school boards) from the definition of employer within the Act. 29 U.S.C. § 152."). Accordingly, the motion for summary judgment as to Count IV of *Storlazzi I* and Count II of *Storlazzi III* is hereby **GRANTED.**[10]

## IX. *CONCLUSION*

Having failed to satisfy the requirements for an action under 42 U.S.C. § 1983; and 29 U.S.C. § 185; the Court **GRANTS** the defen-

---

**9.** In Massachusetts, School Committees are considered part of local governments. *Braintree Baptist Temple v. Holbrook Public Schools,* 616 F.Supp. 81, 89 (D.Mass.1984) (holding school committee not entitled to immunity from suit under the 11th Amendment). The School Committee in each town "shall consist of the mayor,

who shall be the chairman and six members elected at large." M.G.L. c. 43 § 31 (West 1994).

**10.** Storlazzi might have raised this claim in state court in an equity action for breach of the duty of fair representation. *See, Miller v. Labor Rela-*

dants' motion for summary judgment with respect to the Count I of *Storlazzi I;* Count I of *Storlazzi II*, and Count I of *Storlazzi III*. The remaining state law claims[11] are hereby dismissed, without prejudice, as there is no longer federal question jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Williams v. Jones,* 11 F.3d 247, 255 (1st Cir.1993).

**SO ORDERED.**

*tions Commission,* 33 Mass.App.Ct. 404, 406, 600 N.E.2d 605 (1992) (finding union did not breach the duty of fair representation it owed to a teacher who did not receive tenure). However, that would be a purely state cause of action over which this Court has no subject matter jurisdiction.

11. The remaining claims are as follows:

*Storlazzi I*
Count II—Breach of the Collective Bargaining Agreement.
Count III—Breach of 1982 Settlement Agreement between Storlazzi and the School Committee.
Count IV—Breach of Duty of Fair Representation. (The Court will interpret this as a state law claim as per the finding that the School Committee is not an "Employer" for pur-

poses of 29 U.S.C. § 185. See section VII *supra* ).
Count V—Defamation.
Count VI—Intentional infliction of emotional distress.
*Storlazzi II*
Count II—Deprivation of Rights under the Massachusetts Civil Rights Act.
Count III—Intentional interference with contract.
Count IV—Intentional infliction of emotional distress.
*Storlazzi III*
Count II—Breach of the Collective Bargaining Agreement.
Count III—Breach of the Duty of Fair Representation. (See above)
Count IV—Deprivation of Rights under the Massachusetts Civil Rights Act.