Paul J. **MEANEY** and Cheryl A. Meaney, Plaintiffs,

v.

Robert **DEVER**, Philip Mahoney, and City of Woburn, Defendants.

No. CIV. 99–11538–NG.

United States District Court, D. Massachusetts.

Sept. 25, 2001.

---

Thomas Drechsler, Finneran, Byrne & Drechsler, Dorchester, MA, Paul J. Meaney, Cheryl A. Meaney, Plaintiffs.

Thomas Frisardi, Peabody & Arnold LLP, Boston, MA, for Robert M. Dever, Philip Mahoney, City of Woburn, Defendants.

### *MEMORANDUM AND ORDER*

GERTNER, District Judge.

On January 5, 1998, the plaintiff, Paul J. Meaney ("Meaney"), a Woburn police officer, sounded the airhorn of his truck during Mayor Dever's inauguration to protest the Mayor's policies towards the Patrolmen's Union and the Firefighter's Union. Within a month he was suspended for disturbing the peace and insubordination.

Meaney brings this action against the defendants, the City of Woburn, Robert M. Dever ("Dever"), and Philip Mahoney ("Mahoney").[1] His core claim is that he was deprived of his right to free speech because of his activities—the horn blowing—in connection with an informational picket that the Woburn Police Patrolmen's Union Local 313 and the Woburn Firefighter's Union organized at Mayor Dever's 1998 inauguration ceremony. Additionally, plaintiff's wife, Cheryl A. Meaney ("Mrs.Meaney"), brings a claim for loss of consortium (Count VI) arising from the defendants' actions against her husband.

Defendants now move for summary judgment.[2] Dever moves for summary judgment on each Count; Mahoney moves for summary judgment on Counts I, II, and VI; and the City of Woburn moves for summary judgment on Counts I, II, V, and VI.

Simultaneously, Meaney has filed a cross-motion for summary judgment on Counts I and II of his complaint.

For the reasons set forth below, I agree with Meaney on his central claim—that the defendants retaliated against him for the exercise of his First Amendment rights. Blasting a horn outside of City Hall in connection with an informational union picket, is a plainly protected activity. The fact that it occurred place at the same time as an elected official's inauguration ceremony (taking place within a nearby building) does not alter its protected character. Protest is sometimes loud. It often makes government officials uncomfortable or angry. If it does, so much the better—an angry or uncomfortable mayor is usually the sign of an effective protest. Bruised

---

1. Those claims are: 1) that the City of Woburn, Dever, and Mahoney deprived Meaney of his right to free speech under 42 U.S.C. § 1983 (Count I) and Mass.G.L. c. 12, §§ 11H, 11I (Count II); 2) that Dever, individually and as Mayor of Woburn, defamed Meaney by uttering false statements thereby damaging Meaney's reputation in the community (Count III); 3) and that the City of Woburn, Dever, and Mahoney intentionally inflicted emotional distress upon Meaney through their actions and statements (Count V).

2. On May 16, 2000, both parties voluntarily agreed to dismiss with prejudice Meaney's allegation of intentional interference with an advantageous relation (Count IV).

egos and hurt feelings are a small price to pay for clearing a wide open space for everyone, including public employees, to speak out on the key issues facing their community. Meaney cannot be penalized for behavior that the First Amendment strongly protects.

Accordingly, I rule as follows:

- Summary judgment is **GRANTED** to Mahoney on Counts II, V, and VI and **DENIED** on Count I.
- Summary judgment is **GRANTED** to the City of Woburn on Counts I, II, V, and VI. The City of Woburn is hereby **DISMISSED** from this action.
- Summary judgment is **GRANTED** to Dever on Counts II, III, V and VI and **DENIED** on Count I.
- Summary judgment is **GRANTED** to Meaney on Count I and **DENIED** on Count II.

## I. BACKGROUND

### A. The Night Of The Protest

On January 5, 1998, Meaney participated in an informational picket organized and sponsored by the Woburn Police Patrolmen's Union Local 313 and the Woburn Firefighter's Union. In order to call attention to their demands for a new collective bargaining agreement and a pay raise, the unions held the picket outside the Woburn City Hall on the evening of the inauguration of Mayor Dever of Woburn and other city officials.

The union members demonstrated from around 7:00 p.m. to around 8:00 p.m. as guests and officials arrived for the inauguration, which was scheduled to begin at 8:00 p.m. From approximately 7:15 p.m. to 8:10 p.m., individuals driving large trucks and private vehicles sounded their horns in support of the unions' picket. Several off-duty police and firefighters also participat-

ed by sounding the horns of their private vehicles.

Around the time that the inauguration began at 8:00 p.m., Meaney called his brother-in-law, James Chute, from his cell phone to request the use of a truck owned by Mr. Chute's company, the Chute Fuel Oil Company. After retrieving one of the oil trucks, Meaney drove it around City Hall as the inauguration took place and sounded its air horn repeatedly from approximately 8:10 p.m. to 8:25 p.m. The parties dispute the number of persons remaining outside of City Hall at this time and whether or not those persons were cheering Meaney on while he sounded his horn. Although Meaney has been a full time patrolman in the Woburn Police Department since June 1985, the parties do not dispute that Meaney was off-duty from his job as a police officer at this time and during his participation in the picket.

### B. The Response To The Protest

On January 6, 1998, Mayor Dever asked Chief of Police Mahoney for a full report concerning the "noisemaking" and the unions' picket. Mahoney, with the help of other officers present at the inauguration, determined that Meaney had sounded the air horn during the inauguration.

Also on January 6, 1998, Dever asked the superintendent of public works to remove the Chute Fuel Oil Company from the City of Woburn's list of auxiliary snowplow services. At times, Meaney drove the Chute Fuel Oil Company's snowplow truck, owned by his relatives, in order to supplement his income.

In the afternoon of January 6, 1998, Meaney asked Mahoney to talk to Dever in order to get Dever to reverse his decision concerning the Chute Fuel Oil Company's snowplow services. Communicating his belief that Dever had acted out of long-standing resentment against him and his

family in canceling the snowplow services, Meaney also stated that he had acted at the protest to "piss off" Dever for failing to negotiate a contract with the police union and for failing previously to give him a thirty day leave of absence.

Following published statements made by Mayor Dever attacking the sounding of the air horn in connection with the unions' protest, Chief Mahoney suspended Meaney for two days on January 21, 1998, for disturbing the peace and insubordination in connection with Meaney's actions at the protest on January 5, 1998, and Meaney's conversation with Chief Mahoney on January 6, 1998. Dever, acting as the appointing authority, affirmed Meaney's suspension at a City Hall hearing on February 6, 1998.

Meaney appealed the suspension to the Massachusetts Civil Service Commission ("CSC"). Stating that there was "no just cause for suspending [Meaney] for two days without pay for exercising his right to free speech," the CSC overturned Meaney's suspension on November 17, 1999. The City of Woburn did not appeal.

## II. *DISCUSSION*

### A. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) provides, in pertinent part, that a court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

In ruling on a summary judgment motion, the Court must view the record and draw inferences in the light most favorable to the non-moving party. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir.1981). "When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, there can no longer be a genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 12 (1st Cir.1994).

This Court must, therefore, determine (1) whether any factual disputes exist, (2) whether those disputes are genuine (that is, whether a reasonable fact-finder could return a verdict for the non-moving party on the basis of the evidence), and, (3) whether any fact genuinely in dispute is material (that is, whether the fact could affect the outcome of the suit under the applicable substantive law). *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *Analysis Of Meaney's Claims*

Meaney brings suit against the defendants claiming that they violated his civil rights under 42 U.S.C. § 1983 (Count I) and Mass.G.L. c. 12, §§ 11H, 11I (Count II) when they deprived him of his right to free speech in connection with his participation in the picket.[3] Meaney also alleges that Dever, individually and as Mayor of Woburn, defamed him (Count III) by uttering false statements about him and thereby damaging his reputation in the community. In addition, Meaney alleges that all of the defendants intentionally inflicted emotional distress upon him (Count V) through their actions and statements.

---

**3.** Although Meaney characterizes his claim as a deprivation of his right to free speech under 42 U.S.C. § 1983, I will treat it as a retaliation against his protected speech under 42 U.S.C. § 1983 for purposes of analysis.

Finally, Meaney's wife, Cheryl A. Meaney, alleges loss of consortium (Count VI) as a result of the defendants' actions against her husband.

### 1. *Retaliation Against Meaney's Protected Speech under 42 U.S.C. § 1983*

#### a. *The Standard*

■ In order to prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must show that government officials took an adverse employment action against him in retaliation for the exercise of his First Amendment rights. *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 675–676, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). Specifically,

> Plaintiffs asserting such First Amendment retaliat[ion] ... claims must establish three elements to state a claim under § 1983:(1) that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern, (2) that the alleged retaliatory action deprived him of some valuable benefit; and (3) that there was a causal relationship between the protected expression and the retaliatory action.

*Storlazzi v. Bakey*, 894 F.Supp. 494, 501 (D.Mass.1995) (Affirmed by *Storlazzi v.*

**4.** Meaney argues that the Massachusetts Civil Service Commission's finding of "no just cause for suspending [Mr. Meaney] for two days without pay for exercising his right to free speech" should collaterally estop the defendants from re-litigating whether the defendants violated Meaney's First Amendment rights. *University of Tennessee v. Elliott*, 478 U.S. 788, 797–99, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). I disagree. In order to safeguard constitutional protections, a federal court must review with its own eyes a constitutional decision from an administrative agency designed only to review employment decisions.

*Bakey*, 1995 WL 623676, 68 F.3d 455 (1st Cir.1995)) (quoting *Wagner v. Wheeler*, 13 F.3d 86, 89 (4th Cir.1993)). If the plaintiff satisfies this burden, the defendants have an opportunity to demonstrate, by a preponderance of the evidence, that the adverse employment action would have been the same regardless of the plaintiff's protected conduct. *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

#### b. *Was Meaney's Sounding An Air Horn At The Union Protest Protected First Amendment Expression Relating To A Matter Of Public Concern?*

■ The first issue to decide is whether Meaney's sounding an air horn at the union protest on January 5, 1998 was protected First Amendment expression relating to a matter of public concern.[4] I find, as a matter of law, that Meaney's expression—specifically the sounding of a air horn—is within the spectrum of First Amendment protected speech and expression.

■■ The First Amendment protects the right of every citizen to speak his or her mind, free from government censorship or sanction. *Pickering v. Board of Education*, 391 U.S. 563, 572–73, 88 S.Ct.

The CSC's review has a limited scope. Essentially, it only determines whether or not there was just cause for the employment action taken. If the CSC does not find just cause, it reverses the employer's decision.

In a similar case, the Third Circuit Court of Appeals found that the Pennsylvania Civil Service Commission's findings regarding a First Amendment violation did not estop the federal courts from reviewing the matter de novo. *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 192 (3rd Cir.1993). Likewise, I find that the Massachusetts Civil Service Commission's determination regarding First Amendment issues does not estop this court from reviewing these issues de novo.

1731, 20 L.Ed.2d 811 (1968). Indeed, the Supreme Court has expressly held that the First Amendment protects the rights of public employees to join together as a union, *Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 465, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979), and to have a peaceful picket for a lawful purpose. *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982).[5]

Meaney contends that he sounded the air horn "to show support for [his] fellow union brothers" and to attract public concern to the issue. Sounding a loud air horn at Mayor Dever's inauguration was a clear and effective way for Meaney to register his disapproval of the Mayor's policies. Undoubtedly, this protest received the attention of those attending the inauguration, including Mayor Dever and Chief Mahoney. Moreover, sounding horns on automobiles—and in this case large trucks—is a common activity for a union protest. Because Meaney's conduct was in connection with the unions' concerted activities, it is constitutionally protected under the First Amendment as well as under the National Labor Relations Act. Additionally, because Meaney's horn blowing registered his protest of the Mayor's policies towards the police union, this expression related to a matter of public concern.

Defendants argue that the First Amendment does not protect the sounding of an air horn in this context. Specifically, the defendants argue that Meaney fails to meet the test described in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), which allows municipalities to control the speech of employees in certain specific circumstances. *See Connick,* 461 U.S. at 142, 103 S.Ct. 1684 (holding that absent unusual circumstances, a public employee's speech at work is protected under the First Amendment only to the extent that it involves a matter of public concern).

First, it is not at all clear that *Connick* has any relevance here. It is undisputed that Meaney was off-duty from his job as a police officer at the time of his participation in the unions' picket. Meaney sounded the air horn as a union member, on non-working hours, separate from his public official capacities. In any case, *Connick* requires a balancing of the government's needs in promoting the efficiency of the public services it performs through its employees against the employee's interest in the protected speech. *Id.* Here, *the* balance is between the defendants' interest in a quiet inauguration and preserving the peace, against Meaney's interest in sounding an air horn as part of a union protest.

I find Meaney's interest in sounding a horn for the purposes of a union protest outweighs the defendants' interest in a quiet inauguration. The protest (although noisy) was at a reasonable hour and outside of City Hall, the public place most likely to draw attention to their concerns. Moreover, Chief Mahoney's own investigation found that although the air horn could be heard inside Woburn's City Hall where the ceremony took place, the noise "was not that loud" inside the building and that the horn blowing did not significantly disrupt the ceremony.

---

5. Congress, through the National Labor Relations Act, acted explicitly to protect First Amendment speech and expression in the labor context. Specifically, the Act states, "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, [and] to bargain collectively through representatives of their own choosing." 29 U.S.C. § 157. Because Meaney's action arises out of the context of a constitutionally protected union picket, the National Labor Relations Act endorses his activities.

Although the parties dispute whether the majority of the other union protesters had left before Meaney sounded his horn and whether these other protesters cheered Meaney when he sounded his horn, these facts are irrelevant here. The number of individuals protesting along with Meaney is inconsequential; he could protest alone after the other 80 to 125 people departed, if he so desired.

So, I arrive at the same result—that Meaney's speech or, in this case, expression by sounding the air horn—is constitutionally protected as a matter of law.

### c. Was There An Adverse Employment Action?

█ Chief Mahoney suspended Meaney for two days on January 21, 1998 for disturbing the peace and insubordination in connection with Meaney's sounding of the air horn at the Mayor's inauguration. Although Meaney never served the two-day suspension, he claims that he "endured the humiliation of the pending suspension, endured the ordeal of two hearings and suffered the embarrassment caused by the Mayor's comments in the local newspapers." In any event, the suspension remained in place until the Massachusetts Civil Service Commission reversed Chief Mahoney's and Mayor Dever's determination almost ten months later on November 17, 1999. These facts are sufficient to amount to an adverse employment action.

### d. Did Meaney Demonstrate A Causal Link Between His Protected Speech And His Suspension?

█ The plaintiff must also demonstrate a causal relationship between the protected speech and the alleged retaliatory action. Mt. Healthy, 429 U.S. at 287, 97 S.Ct. 568. The First Circuit has stated,

In a ... [First Amendment retaliation] case, plaintiffs must bear the threshold burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that plaintiff's constitutionally protected conduct ... was a 'substantial' or 'motivating' factor behind [the retaliation].

See Storlazzi, 894 F.Supp. at 502 (quoting Acevedo–Diaz v. Aponte, 1 F.3d 62, 66–67 (1st Cir.1993)).

█ Meaney has produced sufficient evidence, both direct and circumstantial, to meet his burden of causally connecting his protected speech with the retaliatory suspension.

#### (1) Circumstantial Evidence

On January 6, 1998, Mayor Dever asked Chief Mahoney for a full investigation into the horn blowing at the inauguration. In a report dated that same day, Mahoney wrote a report to Dever that Meaney engaged in "[d]eliberate horn blowing to disrupt the inauguration."

That very day, Dever asked the superintendent of public works to remove the Chute Fuel Oil Company, the company owned by Meaney's relatives for which Meaney occasionally worked, from the City of Woburn's list of auxiliary snowplow services. Meaney had borrowed one of the company's trucks, for the purposes of sounding its air horn, during the inauguration.

Also on January 6, 1998, Meaney had a phone conversation with Chief Mahoney. Meaney indicated that he was very upset that the Mayor had terminated the snowplowing agreement with the Chute Fuel Company. Mahoney informed Meaney that he thought Meaney's actions during the protest were "outrageous and ridiculous." Meaney maintained that despite sounding the air horn to "piss off" Dever, the horn blowing was a protected activity due to his status as a union member.

## (2) *Direct Evidence*

The best form of direct evidence of a causal connection between Meaney's participation in the union picket and the suspension comes from published comments made by both Dever and Mahoney. First, on or about January 5, 1998, in a published article, Chief Mahoney stated:

> [Y]ou cannot go, on purpose, and disrupt a public meeting. When you do that, that would be disturbing the peace. This is not that type of incident. The mayor is frustrated, the mayor is upset, and I don't blame the mayor … But I am going to make the mayor aware that there are certain constitutional rights that go with these picketers, as well.

In that same article, Mayor Dever stated:

> [I]f I am able to identify the perpetrators, there will be repercussions. This is not high school. There are a few people who have to grow up—they are dragging the rest of the union down with them.

In another article published on January 15, 1998, Mayor Dever stated:

> [C]ertain individuals took it upon themselves to go beyond the scope of the collective bargaining action and engaged in the illegal act of disrupting a public meeting through the use of truck mounted air horns.
>
> This action went beyond the bounds on common decency, and certainly beyond the bounds of acceptable behavior for a law enforcement officer of this city.

In addition to these comments, on January 21, 1998, Meaney received notification that Mahoney had suspended him for two days without pay for violating certain codes of conduct. The notice identified "[t]he reasons for this suspension" as Meaney's "actions and statement on January 5, 1998 and January 6, 1998." Chief Mahoney also testified that Meaney's actions on January 5, 1998 and January 6, 1998 were the basis for Meaney's suspension. The Mayor subsequently affirmed the suspension for what he had characterized in the published statements as illegal conduct.

## (3) *Conclusions*

On the undisputed facts, a reasonable jury would be obliged to find that Meaney's participation in the union protest was the substantial or motivating factor behind Meaney's suspension. The defendants simply cannot deny that their disapproval of Meaney's constitutionally protected horn blowing activities at the inauguration substantially contributed to their decision to suspend him.

### e. *Did The Defendants Show That The Decision To Suspend Meaney Would Have Occurred Regardless Of His Protected Speech?*

Since Meaney has met his initial burden of showing a causal connection between his constitutionally protected speech and the suspension, the "defendants must be afforded an opportunity to show by a preponderance of the evidence that [they] would have reached the same decision … even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568.

The defendants contend that it was reasonable to suspend Meaney after he spoke insolently about Dever in a conversation with Mahoney the day following the union protest. Also, the defendants claim there is an important interest in ensuring that their police are law abiding on and off duty.

██ Defendants' position is totally without merit on these facts. Defendants identify two bases for Meaney's suspension—Meaney's conduct while blowing the horn during the union protest and his allegedly insubordinate statements concern-

ing Mayor Dever made to Chief Mahoney in the telephone call on January 6, 2001. As explained above, Meaney's horn blowing was constitutionally protected expression; the defendants cannot retaliate against him on the basis of this expression. To prevail then, the defendants must prove that any reasonable jury would find that Meaney would have been suspended *even if* Meaney had never participated in the union protest. In this context, such a jury would have to find that Meaney's alleged insubordination during his telephone call with Chief Mahoney—rather than his legitimate protest—would have resulted in his two day suspension. The defendants have failed to meet this burden with the evidence presented.

In effect, the defendants are attempting to argue that they suspended Meaney not because they disapproved of his protesting, but rather because they disapproved of the *reasons* behind his decision to protest. This is a distinction without a difference in this setting. Meaney's motive for participating in protected activity plainly cannot serve as a legitimate basis for Meaney's suspension.

### f. Are Mayor Dever And Chief Mahoney Entitled To Qualified Immunity?

Dever and Mahoney both argue that they should receive summary judgment due to a defense of qualified immunity from the charges in Counts I and II.

■■■ "Government officials performing discretionary functions, generally are shielded [by qualified immunity] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The First Circuit has identified a three-

step process for determining qualified immunity claims:

> (1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right.

*Starlight Sugar, Inc. v. Soto,* 253 F.3d 137, 141 (1st Cir.2001) (citations omitted).

### (1) Mahoney's Request For Qualified Immunity

■■■ First, Meaney alleges that Mahoney infringed his constitutionally protected right to free speech by suspending him in connection with his participation in the union protest. In addition, the right to protest in conjunction with a union picket over a matter of public concern was clearly established by the First Amendment and the National Labor Relations Act at the time the defendants handed down the suspension. Therefore, the first and second prongs to the test of qualified immunity are met.

Mahoney's claim for qualified immunity thus turns on whether he, as an objectively reasonable official, believed that he would not be violating Meaney's clearly established constitutional right by suspending him for his activities in connection with the union picket and protest. The answer to this question, as demonstrated by Chief Mahoney's own statements, is "no"—an objectively reasonable official would have realized that suspending Meaney for participating in a union protest would violate Mahoney's right to free speech. Mahoney was quoted in a news article stating,

> [Y]ou cannot go on purpose and disrupt a meeting. When you do that, that would be disturbing the peace. This is

not that type of incident. The mayor is frustrated. The mayor is upset and I don't blame the mayor .... But I'm going to make the mayor aware that there are certain constitutional rights that go with these picketers as well.

This quote—published in a news article on January 5, 1998, over two weeks prior to actually suspending Meaney—shows that Mahoney knew or should have known what he was doing was not constitutionally permissible. In the two week time period, Mahoney had ample time to thoroughly investigate whether he would be violating Meaney's rights by suspending him for participating in the unions' picket. Moreover, a reasonable police officer should know—as Mahoney stated—that picketers have "certain constitutional rights" as well.

For the above mentioned reasons, Mahoney's request for summary judgment on Count I is **DENIED** and Meaney's cross-motion for summary judgment on Count I is **GRANTED**.

### (2) *Dever's Request For Qualified Immunity*

■ The first and second prongs of the qualified immunity test are fulfilled for the same reasons as stated above. The granting of qualified immunity again turns on the third prong of the test: whether an objectively reasonable official would have believed that the action taken violated the clearly established constitutional right.

I am faced with determining whether Mayor Dever should have been aware that he would be violating Meaney's constitutionally protected rights by affirming the suspension. Although Mahoney stated that he would make "the mayor aware that there are certain constitutional rights that go with [ ] picketers," there is no indication in the record that he ever did. Despite this fact, Dever's request for qualified immunity fails.

There are numerous published statements in this case reflecting Dever's stated desire to punish those who were protesting his inauguration. Expressing a wish to "identify the perpetrators" in order to hand out "repercussions," Mayor Dever felt "the perpetrators" were "dragging the rest of the union down." In addition, as discussed above, Dever cancelled the snowplowing agreement with Meaney's relatives the day following the protest. Mayor Dever's animus towards the protesters may well have unreasonably affected his judgment.

Mayor Dever offers no evidence that he took reasonable steps to ascertain whether suspending Meaney would violate Meaney's constitutional rights. Based on Chief Mahoney's statements that "there are certain constitutional rights that go with these picketers," even consulting with Chief Mahoney should have warned Dever that his affirming Meaney's suspension would violate Meaney's constitutional rights. Finally, common sense suggests that a mayor should be aware that suspending a subordinate for engaging in a public protest against him over an issue of public concern raises profound First Amendment concerns. To rule otherwise and immunize Mayor Dever here would give high level government officials a free pass to discipline subordinates who exercise their bedrock rights to critique officialdom and protest. This would be an intolerable erosion of our First Amendment freedoms.

In short, Dever's actions cannot be described as reasonable under the circumstances, and therefore his request for summary judgment on Count I is **DENIED** and Meaney's cross-motion for summary judgment on Count I is **GRANTED**.

### g. *Is The City Of Woburn Immune From Suit Under A Theory Of Respondeat Superior?*

■ "It is well settled that municipalities cannot be held liable under 42

U.S.C. § 1983 on the basis of respondeat superior." *MacDowell v. Manchester Fire Dep't,* 769 F.Supp. 40, 45 (D.N.H.1990) (citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). In addition, a plaintiff cannot recover under 42 U.S.C. § 1983 "unless action pursuant to an official municipal policy of some nature caused a constitutional tort." *Monell,* 436 U.S. at 691, 98 S.Ct. 2018.

■ Here, there is no evidence to suggest that Meaney's suspension was anything more than an isolated incident. Therefore, summary judgment for the City of Woburn is **GRANTED** on Count I because Meaney has demonstrated no set practice, policy, or custom that caused a deprivation of his constitutional rights.

### 2. *Retaliation Against Meaney's Protected Speech Under The Massachusetts Civil Rights Act*

#### a. *The Standard*

■ To establish a claim under the Massachusetts Civil Rights Act, Mass. Gen. L. ch. 12 §§ 11H, 11I,[6] the plaintiff must prove, "(1) [his] exercise or enjoyment of rights secured by the Constitution or laws of the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference was by 'threats, intimidation or coercion.'" *Swanset Development Corp. v. City of Taunton,* 423 Mass. 390, 395, 668 N.E.2d 333 (Mass.1996). *See also Freeman v. Planning Board of West Boylston,* 419 Mass. 548, 564, 646 N.E.2d 139 (1995); *Bally v. Northeastern Univ.,* 403 Mass. 713, 717, 532 N.E.2d 49 (Mass.1989).

Because this Court has already established that Meaney had a constitutionally protected right to protest at the inauguration, which Mayor Dever and Chief Mahoney interfered with by suspending Meaney, I undertake analysis of Meaney's claim under Mass. Gen. L. ch. 12 §§ 11H, 11I only to examine for the existence of threats, intimidation, or coercion.

#### b. *Did Mayor Dever, Chief Mahoney, Or The City Of Woburn Violate Meaney's Rights Under Mass. Gen. L. ch. 12 §§ 11H, 11I?*

■ Under the Massachusetts Civil Rights Act, a direct violation of a person's rights does not trigger liability under the

---

**6.** Mass. Gen. L. ch. 12 §§ 11H provides:

Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured. Said civil action shall be brought in the name of the commonwealth and shall be instituted either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which the person whose conduct complained of resides or has his principal place of business.

Mass. Gen. L. ch. 12 §§ 11I provides:

Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court.

act unless this direct action also includes threats against, or intimidation or coercion of, a particular individual. *Planned Parenthood League Of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 473–474, 631 N.E.2d 985 (Mass.1994). Under the Act, "threat" involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm; "intimidation" involves putting in fear for purpose of compelling or deterring conduct; and "coercion" is the application of force, physical or moral, to another so as to constrain him to do against his will something he would not otherwise have done. *Id.*

██ Even though Mayor Dever's actions against Meaney amounted to a violation of Meaney's constitutional rights, they did not reach the level of threats, intimidation, or coercion necessary to trigger liability under the Massachusetts Civil Rights Act. The evidence presented that possibly could support a claim of threats, intimidation, or coercion are the suspension itself, the removal the Chute Fuel Oil Company from the City of Woburn's list of auxiliary snowplow services, and Mayor Dever's published comments that there would be "repercussions" against the police officers who attempted to disrupt the inauguration.

██ None of these actions amount to the threats, intimidation, or coercion necessary under the Act to support a claim. The suspension and the cancelling of the snowplowing services amount to a direct violation of Meaney's constitutional rights

as an impermissible retaliatory action against Meaney's constitutionally protected protest but do not involve the necessary threats, intimidation, or coercion to impose liability under the Massachusetts Civil Rights Act. Likewise, because Mayor Dever's vague promise of "repercussions" appears only to refer to the later job related disciplinary action against Meaney which formed the basis of the direct violation of Meaney's rights, this comment does not trigger liability under the Act.[7] For the foregoing reasons, Mayor Dever's request for summary judgment on Count II is **GRANTED** and Meaney's cross-motion for summary judgment on Count II is **DENIED.**

██ Similarly, although Chief Mahoney's actions against Meaney amounted to a violation of Meaney's constitutional rights, they did not reach the level of threats, intimidation, or coercion necessary to impose liability under the Massachusetts Civil Rights Act. Mahoney's suspension of Meaney was a direct violation of Meaney's right that did not by itself involve threats, intimidation, or coercion. As a result, Chief Mahoney's request for summary judgment on Count II is **GRANTED** and Meaney's cross-motion for summary judgment on Count II is **DENIED.** Similarly, because the actions of Mayor Dever and Chief Mahoney are an insufficient basis for liability under the Act, and Meaney has pointed to no governmental policy or custom that violated his civil rights, the City of Woburn's request for summary judgment on Count II is **GRANTED** and Meaney's cross-motion for

---

7. Of course, Mass. Gen. L. ch. 12 §§ 11H, 11I provides a remedy which is coextensive with 42 U.S.C. § 1983. *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822–823, 473 N.E.2d 1128 (1985). In a practical sense, this fact makes my dismissal of Count II insignificant. Because I have granted summary judgment in favor of Meaney with respect to May- or Dever and Chief Mahoney on Count I based upon 42 U.S.C. § 1983, the dismissal of Count II will not change Meaney's remedy for the constitutional violations committed against him. He still will be fully compensated for Dever's and Mahoney's unlawful retaliation against him.

summary judgment on Count II is **DE-NIED.**

### 3. *Defamation*

Meaney alleges that Dever, individually and as Mayor of Woburn, defamed him. Meaney's claim of defamation arises from two instances in which Dever made comments to a local newspaper. Meaney alleges that a newspaper in Woburn published the Mayor's statements, which injured Meaney's reputation in the community as a police officer.

#### a. *Standard*

■■■ To state a cause of action for defamation, a plaintiff must show: (1) a false and defamatory communication, (2) of and concerning him, which is (3) published or shown to a third party. *Dorn v. Astra,* 975 F.Supp. 388, 396 (D.Mass.1997). The alleged defamatory statements must be factual assertions, beyond mere opinion. *Aldoupolis v. Globe Newspaper Co.,* 398 Mass. 731, 733–734, 500 N.E.2d 794 (Mass. 1986).

#### b. *An Illegal Act*

■■■ Meaney's first claim of defamation originates from comments made by Dever, which a local newspaper published on January 15, 1998. Dever stated to the press:

> Certain individuals took it upon themselves to go beyond the scope of the collective bargaining action and engaged in the illegal act of disrupting a public meeting through the use of truck mounted air horns.
>
> This action went beyond the bounds on common decency, and certainly beyond the bounds of acceptable behavior for a law enforcement officer of this city.

I find that Mayor Dever's statements were not false factual assertions, and therefore, these statements are not actionable under a claim for defamation. The first statement—that individuals engaged in an illegal act of disrupting a public meeting through the use of air horns—is a mixed statement of fact and opinion. The statement that individuals blew truck mounted air horns and disrupted a public meeting is a factual assertion. However, although the parties might quibble over the extent to which the horn blowers "disrupted" the meeting, the record clearly supports the factual basis for the horn blowing alleged in this assertion, and therefore, the statement cannot be defamatory.

The next question is whether Mayor Dever's characterization of this horn blowing as "illegal" is a statement of opinion or fact. I find that Mayor Dever's characterization of the horn blowers' actions as illegal is a statement of opinion. Although, as discussed above, Mayor Dever's opinion that these constitutionally protected acts were illegal was undoubtedly incorrect, his characterization of these acts as illegal is insufficient to form the basis for Meaney's defamation claim.

Finally, Dever's statement that the horn blowers' action went "beyond the bounds of acceptable behavior for a law enforcement officer" is clearly a statement of opinion and thus not actionable. For these reasons, I find that Dever's statements were not defamatory.

#### c. *Tarnishing The Badge*

■■■ Meaney's second claim of defamation emanates from Dever's comment, published on January 22, 1998, stating that Meaney and other police officers "tarnished the badge they wear .... If these officers have so little respect for the government of this city, what chance does the average citizen have?"

■■■ As discussed above, rhetorical hyperbole or pure opinion is not actionable in

defamation. *Lyons v. Globe Newspaper Co.*, 415 Mass. 258, 266–67, 612 N.E.2d 1158 (Mass.1993). Because this comment is clearly an opinion and not a factual assertion, the statement is not defamatory.

### d. *Conclusion*

For the above mentioned reasons, summary judgment is **GRANTED** to Dever, both as Mayor of Woburn and individually, on Count III of Meaney's complaint.

### 4. *Intentional Infliction Of Emotional Distress*

In Count V of his complaint, Meaney alleges that all of the defendants intentionally inflicted emotional distress upon him through their actions and statements.

### a. *Standard*

■ Under Massachusetts law, to prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove that the defendant (1) intended to inflict emotional distress by (2) undertaking actions that were extreme and outrageous, thereby (3) causing the plaintiff severe emotional distress. *See Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 27 (1st Cir.1997), citing *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315 (Mass.1976).

### b. *Mayor Dever*

■ At the outset, I acknowledge that the burden for proving a claim for intentional infliction of emotional distress is demanding. None of Dever's actions or statements, even viewed in a light most favorable to Meaney as the non-moving party for purposes of summary judgment, can carry this burden.

■ In his complaint, Meaney alleges that he was "caused to suffer severe emo-

tional distress by the actions and statements of the defendants." Meaney's claim turns on whether a reasonable jury could find that Dever's actions and statements were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Flibotte*, 131 F.3d at 27, citing *Foley v. Polaroid Corp.*, 400 Mass. 82, 508 N.E.2d 72 (Mass.1987). Meaney alleges that the Mayor's cancelling of a snowplowing contract with his relatives, the day following his use of their truck in the unions' protest, caused him severe emotional distress. Although a reasonable jury easily could find that the cancelling of the contract was retaliatory to Meaney's participation in the union protest, a reasonable jury could not find that this action rises to. the level of extreme, outrageous, or intolerable conduct.

Meaney also alleges that the statements published by various Woburn Newspapers caused him severe emotional distress. Again, a reasonable jury could not conclude. that these published comments, even if directed specifically at Meaney, were extreme, outrageous, or intolerable. If anything, these comments fall under the category of mere insults, indignities, threats, and annoyances and therefore cannot sustain a claim for intentional infliction of emotional distress.

Because a rational fact finder could not reasonably classify Dever's conduct as extreme, outrageous, or intolerable, summary judgment is **GRANTED** in favor of Dever on count V.

### c. *Chief Mahoney*

Similarly, Meaney has failed to provide sufficient evidence to support his allegation that Mahoney intentionally inflicted emotional distress against him.[8] Specifically,

---

**8.** In his opposition to summary judgment, Meaney vaguely addresses defendants' motion

Meaney has not shown that Mahoney's conduct was extreme and outrageous.

■ Mahoney suspended Meaney for two days without pay for what Mahoney described as disturbing the peace and insubordination. Even if Mahoney sought to intentionally inflict emotional distress against Meaney, Mahoney's conduct was not extreme, outrageous, or intolerable.

Regardless of Mahoney's motivation for suspending Meaney, a reasonable jury could not find the extreme and outrageous conduct necessary to sustain a claim for intentional infliction of emotional distress in Mahoney's actions. Thus summary judgment in favor for Mahoney is **GRANTED** on Count V.

### d. *The City of Woburn*

Mass. Gen. L. Ch. 258 § 2 states that a municipality is not liable for the intentional torts of its employees. *Ringuette v. City of Fall River*, 888 F.Supp. 258, 263 (D.Mass.1995). In addition, there is no evidence that the actions of Dever or Mahoney meet the level of extreme or outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Therefore, I hereby GRANT summary judgment for the City of Woburn on Count V.

### 5. *Mrs. Meaney's Loss Of Consortium Claim*

Mrs. Meaney alleges a claim for loss of consortium stating, "as a result of the defendants' actions against her husband, [she] was caused to suffer great mental anguish and anxiety and the loss of her husband's companionship and society."

■ A spouse of a federal civil rights victim is not permitted to raise a separate ancillary cause of action for loss of consortium based solely upon the federal civil rights violation. *Tauriac v. Polaroid Corp.*, 716 F.Supp. 672, 673 (D.Mass.1989). Therefore, Mrs. Meaney has no claim for loss of consortium based upon Count I, despite my granting of summary judgment on Count I (the 42 U.S.C. § 1983 claim) in favor of Meaney with respect to Chief Mahoney and Mayor Dever.

With the exception of Count I, which cannot support a claim based upon loss of consortium, the defendants' motions for summary judgment on all remaining counts have been granted. As a result, Mrs. Meaney has no valid remaining claim upon which to premise her loss of consortium claim. *See Mouradian v. General Electric Co.*, 23 Mass.App.Ct. 538, 544, 503 N.E.2d 1318 (1987) (finding that in Massachusetts, a consortium claim may be brought only when claimant's spouse has a valid tort claim). Therefore, defendants' motion for summary judgment on count VI is **GRANTED.**

## III. *CONCLUSION*

Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. Plaintiff's cross-motion for summary judgment is **GRANTED** in part and **DENIED** in part. A court date to determine the extent of damages on Count I will be set.

Accordingly, it is **ORDERED:**

1. Defendants' motion for summary judgment on Count I (42 U.S.C. § 1983). is **DENIED** except to the City of Woburn. The City of Woburn's motion for summary judgment on Count I is **GRANTED.** Plaintiff's cross-motion for summary judgment

---

for summary judgment on Count V by discussing only Dever's claim to qualified immunity.

on Count I is **GRANTED** as to defendants Dever and Mahoney and **DENIED** as to the City of Woburn.

2. Defendants' motion for summary judgment on Count II (Mass.G.L. c. §§ 11H, 11I) is **GRANTED.** Plaintiff's cross-motion for summary judgment on Count II is **DENIED.**

3. Dever's motion for summary judgment on Count III (defamation) is **GRANTED.**

4. Defendants' motion for summary judgment on Count V (intentional infliction of emotional distress) is **GRANTED.**

5. Defendants' motion for summary judgment on Count VI (loss of consortium) is **GRANTED.**

**SO ORDERED.**

### ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

For the reasons stated in the accompanying Memorandum and Order dated September 25, 2001, it is hereby **ORDERED:**

1. Defendant Philip Mahoney's Motion For Summary Judgment [docket entry number 17] is **GRANTED IN PART** and **DENIED IN PART;**

2. Defendant City of Woburn's Motion For Summary Judgment [docket entry number 18] is **GRANTED.** The City of Woburn is hereby **DISMISSED** from this action.

3. Defendant Robert Dever's Motion for Summary Judgment [docket entry number 19] is **GRANTED IN PART** and **DENIED IN PART;** and,

4. Plaintiffs Paul J. Meaney's and Cheryl A. Meaney's Cross–Motion For Summary Judgment [docket entry

number 23] is **GRANTED IN PART** and **DENIED IN PART.**

**SO ORDERED.**